UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ENTERGY LOUISIANA LLC | CIVIL ACTION |
| VERSUS | NO. 14-750 |
| HICO AMERICAN SALES & TECHNOLOGY CO., INC. | SECTION "L"(3) |

## ORDER & REASONS

Before the Court are three motions: (1) Defendant HICO American Sales & Technology Co., Inc.'s ("HICO") Motion for Partial Summary Judgment (Rec. Doc. 29); (2) Plaintiff Entergy Louisiana LLC's ("Entergy") Motion *in limine* to Exclude Expert Testimony Regarding Custom and Items of Damage Beyond the Provisions in the Purchase Order (Rec. Doc. 28); and (3) HICO's Motion to Strike the Declaration of Scott McCann (Rec. Doc. 36). The Court has reviewed the parties' briefs and applicable law, and having heard oral argument, now issues this Order & Reasons.

### I.     UNDISPUTED FACTS

This case arises from an alleged breach of contract on a 2010 Purchase Order between Plaintiff Entergy and Defendant HICO. On November 22, 2010, Entergy entered into Purchase Order Agreement No. 10299147 ("Purchase Order") with HICO that provided HICO would manufacture and supply a 900 MVA shell power transformer for installation at Entergy's Ninemile Plant in Westwego, Louisiana at a sale price of $3,967,384,39. (Rec. Doc. 30-2 at 2). The Purchase Order specifies that "[a]cceptance means the transformer has been delivered to the ship to location, placed on the transformer pad, review of impact recorder has been

reviewed/acceptable, and passes inspection by Entergy's technical team." (Rec. Doc. 29-4 at 1).

Section 5 of the Purchase Order's Terms and Conditions states:

> Purchaser has the right to inspect and test fully any products purchased hereunder. This right shall extend to the inspection of products during manufacture, at no cost to the purchaser, upon reasonable notice to the Seller. Purchaser also has the right to inspect any service operations hereunder, at no cost to the Purchaser, upon reasonable notice. Purchaser may reject any products that it finds to be defective or at variance with the Order specifications, regardless of the time or place of discovery of the defect or variance and, in the case of no apparent defects or variances, regardless of any prior acceptance of the products. Regardless of anything stated herein, the Seller remains responsible for delivery of products in accordance with the Order….Rejected products shall, at the Purchaser's option, be returned to Seller at the Seller's cost, or be retained at a renegotiated price. Defective products shall be replaced at the Seller's cost unless Purchaser elects not to accept replacement. In the event of the latter, Seller may replace, including repairing, remedying, removing or correcting any non-conformity or unsatisfactory component of the product(s), or employ another to do so, at Seller's expense.

(Rec. Doc. 29-4 at 4). The Purchase Order further states that "Time is an essential element of this Order…Purchaser has the right to cancel Orders as to all or part of an Order, without obligation of any kind to Seller, should delivery of any shipment not be made on schedule."

(Rec. Doc. 29-4 at 4). Section 26 contains an integration clause which states:

> The Order constitutes the entire agreement between the parties and supersedes all other representations or agreements….Should any provision of any document provided by Seller and attached to this Order be in conflict with any of the provisions in the main body of this Order, such provision of such Seller-provided document will be null and void.

(Rec. Doc. 29-4 at 8). Section 10 of the Terms and Conditions, entitled "Warranty," states that the "5 Year HICO warranty applies…[and] [s]hould any provision in the HICO 5 Year Warranty

conflict with any of the provisions in this section, the provisions in this section shall govern."

(Rec. Doc. 29-4 at 5).  The Warranty states:

> Seller [HICO] warrants [that] . . . the equipment will be free from defects in material and workmanship for a period of five years from delivery.  If within such period the delivered equipment is proved to Seller's satisfaction to be defective, such equipment shall be repaired or replaced, at the Seller's option, F.O.B. its factory or designated repair facility . . . Seller's obligation hereunder shall be limited to repair or replacement and shall be conditioned upon Seller's receiving written notice of any alleged defect within seven (7) days after its discovery.
>
> This warranty is exclusive and is in lieu of all other express or implied warranties, including, but not limited to, any implied warranty of merchantability or fitness for purpose, and states Seller's entire and exclusive liability and Buyer's exclusive remedy.  Seller shall not be liable for consequential, or incidental damages whatsoever.

(Rec. Doc. 29-4 at 9).  Following execution of the Purchase Order, HICO designed and manufactured the transformer to Entergy's unique specifications.  (Rec. Doc. 29-2 at 2).

HICO delivered the 850,000 pound transformer to Entergy in September 2011.  (Rec. Doc. 29-2 at 2).  On October 14-15, 2011, the transformer's on-line DGA (dissolved gas analysis) monitor detected elevated gas levels during the acceptance and commissioning testing of the transformer.  (Rec. Doc. 29-2 at 3).  Onsite inspections and tests were unsuccessful in revealing the root cause of the gassing.  On November 2, 2011, Scott McCann sent a letter on behalf of Entergy to Jason Neal of HICO that stated, "[a]s you know, the HICO transformer (serial no. TB803261.01) experienced gassing issues during two attempted acceptance tests.  Pursuant to Section 5 of Purchase Order No. 10299147, please be advised that Entergy Louisiana, LLC hereby rejects the transformer."  (Rec. Doc. 30-7 at 1).

3

On November 9, 2011, Salina Dillie, a HICO project manager, emailed a proposed repair schedule for the transformer to Scott McCann. (Rec. Doc. 30-8 at 5). Mr. McCann responded and said:

> At this time, none of the scenarios are acceptable to Entergy Louisiana. To fully consider all options, we are planning to test the market to determine what other manufacturers can offer, both in terms of price and delivery schedule. In the meantime, we will continue to gather all of the information regarding Entergy Louisiana's costs associated with HICO America's defective transformer, including the two recent failed transformer acceptance tests.

(Rec. Doc. 30-8 at 4). On November 18, 2011, Mr. McCann sent another email to HICO and stated that Entergy planned to "issue an RFP to determine how quickly other manufacturers can provide a new unit to us and at what price. We are doing this to mitigate the operational risk to Entergy. We will weigh this against any and all options you propose to us to make a final decision." (Rec. Doc. 30-8 at 3). Mr. Neal later emailed Mr. McCann on December 1, 2011, and indicated that HICO had found a way to expedite shipping but would require significant expense. Mr. Neal went on to state that "[n]ormally that investment would be made by HICO immediately and without needing guidance from Entergy….In the current situation, where Entergy may not commit to receive this unit that was contracted with HICO, once it is remediated and shipped back to the site, we need to get guidance from Entergy on your intentions." (Rec. Doc. 30-8 at 2). Mr. McCann responded and said that "[Entergy] simply does not have enough information to provide a definitive response. As previously communicated, we are evaluating a number of options." (Rec. Doc. 30-8 at 2). Mr. McCann also indicated in his email that Entergy had sent out an RFP (request for proposals) on November 29, 2011 to solicit bids for a new transformer from other manufacturers. (Rec. Doc. 30-8 at 2).

On December 2, 2011 Mr. Neal responded to that email and said that he "understood" Mr. McCann's position. (Rec. Doc. 30-8 at 1). Mr. Neal went on to state that they had found a quicker, but more expensive shipping option, but HICO was "willing to make that commitment and investment if Entergy would commit to continue working with HICO on this unit." (Rec. Doc. 30-8 at 1). Mr. McCann responded on December 6, 2011 and stated that "[i]t is difficult for Entergy Louisiana to commit to anything without additional information…In light of the technical issues that HICO experienced during both attempted energizations and the quality control issues you have described at your factory, we believe that it is prudent to explore all options." (Rec. Doc. 30-8 at 1). In response, Mr. McCann stated that HICO made the decision to expedite the ocean schedule "on our own." (Rec. Doc. 30-8 at 1).

Over the next few months, Entergy continued to work with HICO on the root cause analysis. (Rec. Doc. 29-14 at 10). Indeed, Entergy continued to communicate with HICO on an almost-daily basis throughout February, March, and April about the root cause analysis and repair schedule of the transformer. (Rec. Doc. 29-14 at 10). Entergy also gave HICO information on the tests Entergy would like HICO to run on the transformer; requested HICO to send Entergy reports on its root cause analysis and repair schedule on a twice per week basis; employed consultants to analyze the inspection and testing activities; and sent Entergy personnel and another consultant to South Korea to participate in the investigations. (Rec. Doc. 29-2 at 4). On April 23, 2012, Ms. Dillie emailed Mr. McCann and said HICO had potentially discovered the contributor to the gassing issues. Specifically, Dillie stated "we 'think' [a potential situation in the core] may be a key contributor to the gassing issue that we have experienced with this unit." (Rec. Doc. 29-22 at 1). Ms. Dillie included a report which specified HICO could repair and deliver the transformer by August 29, 2012. (Rec. Doc. 29-22 at 11).

Unknown to HICO, Entergy had already contracted with another supplier to manufacture and supply a transformer. (Rec. Doc. 29-2 at 6). On April 24, 2012, Mr. McCann sent a letter to HICO and stated:

> Pursuant to Section 5 of the above referenced Terms and Conditions for the Purchase Order, Entergy Louisiana [ ] hereby rejects the transformer purchased thereunder due to the defects in the transformer, and our lack of confidence in any attempted repair of those defects. [Entergy] elects not to accept replacement, as provided by the Terms and Conditions. [Entergy] is gathering information regarding its additional costs incurred as a result of the delivery of the transformer, and will forward that information on to you so that you make arrangements to reimburse those costs.

(Rec. Doc. 30-10 at 1). On February 18, 2014, Entergy filed suit against HICO alleging that HICO breached the contract by supplying a defective transformer. Entergy seeks damages that include the difference in the cost between Defendant's transformer and the cost of the third-party transformer and the incremental expenses arising from the delivery by HICO of the defective transformer. (Rec. Doc. 1-2 at 3). Entergy filed suit in Jefferson Parish, and HICO removed to this Court pursuant to this Court's diversity jurisdiction. HICO has filed a counterclaim, alleging that Entergy did not allow HICO to exercise its right under the Purchase Order to repair any defect. (Rec. Doc. 4).

## II.  PRESENT MOTIONS

As resolution of the Motion for Partial Summary Judgment provides the framework to analyze Entergy's Motion *in limine* (Rec. Doc. 28) and HICO's Motion to Strike the Declaration of Scott McCann (Rec. Doc. 36), the Court will focus on the Motion for Partial Summary Judgment first.

### A. HICO's Motion for Partial Summary Judgment (Rec. Doc. 29)

#### 1. Parties' Arguments

HICO filed a motion for partial summary judgment arguing that Entergy's damages are limited to the repair or replacement cost of the transformer pursuant to the terms of the HICO Warranty.[1] HICO avers that this Court should enforce the terms of the contract and limit Entergy's remedy to the repair and replacement costs of the transformer because the terms are clear, unambiguous, do not lead to absurd consequences, and do not violate public policy. (Rec. Doc. 29-1 at 14). HICO cites *FMC Corp. v. Continental Grain Co.*, a Louisiana Fourth Circuit case as support for its argument. (Rec. Doc. 29-3 at 15-18). Further, HICO contends that "[c]ourts routinely hold that a warranty guaranteeing 'repair or replacement' of defective equipment entitles the warrantor to 'a reasonable opportunity to repair the defect,'" and that Entergy denied HICO a reasonable opportunity to repair the transformer. (Rec. Doc. 29-3 at 20-21). HICO notes that three expert engineers have each submitted expert reports that conclude Entergy should have afforded HICO an opportunity to repair and re-deliver the transformer pursuant to industry custom. (Rec. Doc. 29-3 at 21).

Entergy opposes the motion and argues that the Purchase Order Terms and Conditions conflict with the Warranty, and as the Purchase Order contains an enforceable integration clause, the Purchase Order controls when its terms conflict with the Warranty. (Rec. Doc. 30 at 7). Entergy maintains that Section 5 of the Purchase Order permitted Entergy to reject the transformer and not accept a replacement. (Rec. Doc. 30 at 10). Looking to the other terms of the Purchase Order, Entergy argues that the Section 11 Indemnity Provision requires HICO to hold Entergy harmless "for any claim or loss" and therefore conflicts with the Warranty that purports to limit Entergy's relief to certain remedies. (Rec. Doc. 30 at 10). Finally, Entergy

---

[1] Entergy claims HICO is liable for damages in the form of Energy's replacement costs; costs of pre-installation factory testing of the HICO transformer; installation costs of the HICO transformer; removal costs of the previous transformer; costs associated with the re-installation of the previous transformer; costs of the investigation/testing of the HICO transformer in South Korea. (Rec. Doc. 29-1 at 8).

avers that Section 13 of the Purchase Order supersedes the Warranty's limitation of remedies because Section 13 "expressly states that 'in addition to any remedies stated herein, Purchaser shall retain any other legal remedies it would have in the event of Seller's breach.'"  (Rec. Doc. 30 at 14).

HICO replies with leave of Court.  HICO contends that Entergy did not dispute facts asserted by HICO: including that Entergy did not perform any analysis of HICO's April 23, 2012 root cause report before sending the April 24, 2012 rejection letter; that Entergy failed to inform HICO that it had already purchased a replacement transformer from another manufacturer; and that Section 10 of the Purchase Agreement expressly incorporates the Warranty.  (Rec. Doc. 39 at 2-3).  HICO again asserts that the Warranty applies to this dispute and argues that Section 26 does not apply to the Warranty because Section 10 expressly incorporates the Warranty – the Warranty is not "merely attached" to the Purchase Order.  (Rec. Doc. 39 at 8-9).  If Section 10 is ambiguous, HICO argues that "contemporaneous emails and deposition testimony resolve the ambiguity by evidencing the parties' clear intent to incorporate the HICO Warranty and treat it as part of the Contract."  (Rec. Doc. 39 at 10).

Assuming the Purchase Order did not incorporate the Warranty, HICO argues that the Warranty would still apply because it does not conflict with Section 5.   (Rec. Doc. 39 at 11).  HICO avers that rejection under Section 5 does not denote outright rejection, i.e. one that ends the transaction, but rather triggers the right to repair or replace the transformer. (Rec. Doc. 39 at 12).  Entergy's contract interpretation, HICO asserts, gives no effect to the Warranty, undermines Section 10, and thus violates the principle of Article 2050 of the Louisiana Civil Code.  (Rec. Doc. 39 at 11).  Even if the Court were to award credence to Entergy's

interpretation of the contract terms, HICO maintains that Entergy did not act reasonably or in good faith and therefore violated Article 1983 of the Louisiana Civil Code. (Rec. Doc. 39 at 13).

### 2. Law and Analysis

#### a. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

#### b. Analysis

The Court must first determine whether Section 5 or the Warranty controls the instant dispute. Louisiana Law applies to this Court's contract analysis. "As a general rule of contract law, separate documents may be incorporated into a contract by attachment or reference thereto." *L & A Contracting Co. v. Ram Indus. Coatings, Inc.*, 762 So. 2d 1223, 1234 (La. App. 1 Cir.

2000). *See also Russellville Steel Co. v. A & R Excavating, Inc.*, 624 So. 2d 11, 13 (La. App. 5 Cir. 1993). Courts can also look to the intent of the parties to determine whether separate documents are part of a contract. *Thurman v. Wood Grop. Prod. Servs.*, No. 09-4142, 2010 WL 4812916, at *4 (E.D. La. Nov. 18, 2010). Here, Section 10 of the Purchase Order states that the "5 Year HICO warranty applies," so HICO contends the Warranty is incorporated by reference, and the Court agrees. The clear language of Section 10 incorporates the Warranty and is therefore distinguishable from the situation outlined in Section 26, where the Seller attaches its document to the contract with no express adoption of that document within the contract.

While the Court has determined that the Purchase Order incorporates the Warranty, the Court's analysis does not end there. It is still not evident whether Section 5 or whether the Warranty controls the instant dispute. If the Warranty applies, Entergy's damages are cabined to replacement and repair costs. Looking to Louisiana Law, the Court finds that the terms of the Purchase Order are ambiguous, and it is therefore a question of fact as to which section controls the instant dispute. Louisiana Law provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "Under this Article, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under pretext of pursuing its spirit." Official Comment, La. Civ. Code art. 2046. *Hampton v. Hampton*, 713 So. 2d 1185, 1189 (La. App. 1 Cir. 1998); *See also Claitor v. Brooks*, 137 So. 3d 638, 644-45 (La. App. 1 Cir. 2013) ("[W]here the words of a contract are clear, explicit and lead to no absurd consequences, the meaning and intent of the parties must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence."). "When the terms of a contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to

its provisions, or the intent of the parties cannot be ascertained, parol evidence is admissible to clarify the ambiguity or show the intention of the parties." *Sanders v. Ashland Oil Inc.*, 696 So. 2d 1031, 1036-37 (La. Ct. App.1 Cir 1997). "The determination of whether a contract is clear or ambiguous is a question of law. *Sims v. Mulhearn Funeral Home Inc.*, 956 So. 2d 583 (La. 2007).

When a contract is ambiguous, the agreement shall be construed according to the intent of the parties. *Sanders*, 696 So.2d at 1037 (citing La. Civ. Code art. 2045). "Intent is an issue of fact which is to be inferred from all of the surrounding circumstances." *Commercial Bank & Trust Co. v. Bank of Louisiana*, 487 So. 2d 655, 659 (La. App. 1 Cir. 1986). *See also Kuswa & Associates v. Thibaut Construction Co., Inc.*, 463 So.2d 1264, 1266 (La. 1985). "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La. Civ. Code Art. 2053. "If issues regarding subjective facts are present, such as intent, knowledge, motive, malice, or good faith, a summary judgment determination is usually not appropriate." *Myles v. Consol Companies, Inc.*, 906 So. 2d 677, 680 (La. App. 3 Cir. 2005).

Applying this law, the Court finds that the terms of Section 5 and the Warranty conflict and therefore render the Purchase Order ambiguous. Section 5 is entitled "Inspection" and states "Purchaser has the right to inspect and test fully any products purchased hereunder." It would therefore seem that Section 5 controls any disputes that arise during inspections *and* after delivery, but the Warranty applies "for a period of five years from delivery." (Rec. Doc. 29-4 at 9). It is therefore ambiguous as to which contract term controls the instant situation. Further, the two clauses contradict each other and cannot be applied at the same time, as the Warranty

dictates that it is at the Seller's option whether to repair or replace the defective product, and Section Five vests that discretion in the Purchaser.  The two terms therefore conflict and render the Purchase Order ambiguous, thus compelling parol evidence to aid in the contract interpretation and determine the parties' intent.

Since the Court finds there is a disputed material fact as to whether the Warranty or Section 5 controls this dispute, there is no need to analyze the parties' other arguments; however, the Court would like to stress that there remain disputed material facts as to whether Entergy afforded HICO a reasonable opportunity to repair or replace the defective transformer.  Entergy avers that Section 5 authorized Entergy to reject the defective transformer.  Section 5 states:

> **Purchaser may reject** any products that it finds to be defective or at variance with the Order specifications, regardless of the time or place of discovery of the defect or variance and, in the case of no apparent defects or variances, regardless of any prior acceptance of the products…Rejected products shall, at the Purchaser's option, be returned to Seller at the Seller's cost, or be retained at a renegotiated price.  Defective products shall be replaced at the Seller's cost **unless Purchaser elects not to accept replacement. In the event of the latter, Seller may replace, including repairing, remedying, removing or correcting any non-conformity or unsatisfactory component of the product(s), or employ another to do so, at Seller's expense**.

(Rec. Doc. 29-4 at 4).

In HICO's reply, HICO advocates the position that the purchaser's decision to "reject" the product does not bring an end to the transaction, but rather denotes that the Purchaser may reject the defective product and that the Seller would have an opportunity to repair the product. Conversely, Entergy avers that it would lead to an absurd consequence if Entergy could elect not to accept a replacement but "then have HICO 'replace, including repairing, remedying, removing, or correcting any conformity or unsatisfactory component of the product(s), or employ

another to do so, at Seller's expense.'" (Rec. Doc. 30 at 9). The Court is not persuaded by Entergy's interpretation. Rather, based on the plain language, the Court agrees with HICO's interpretation: Entergy has the option of either (1) accepting a replacement, as in another transformer, or (2) if Entergy chooses not to accept a replacement, HICO can repair or fix the "non-conform[ing] or unsatisfactory **component**" of the transformer.

Affording credence to HICO's interpretation, the Court must read in to the Purchase Order that HICO would have a reasonable opportunity to repair the defective product, as it would be nonsensical to allow HICO an unlimited amount of time to cure the defect. Such an interpretation gives effect to Article 1983 of the Louisiana Civil Code, which requires parties to perform contracts in good faith. Applying this good faith standard, the Court finds there is a disputed material fact as to whether Entergy afforded HICO a reasonable opportunity to repair the transformer. This standard also applies to the Warranty, so if the factfinder concludes that the Warranty controls the dispute, there is also a disputed material fact regarding the reasonable opportunity to repair under the Warranty.

### B. Entergy's Motion *in limine* to Exclude Expert Testimony Regarding Custom and Items of Damage Beyond the Provisions in the Purchase Order (Rec. Doc. 28)

#### 1. Parties' Arguments

Entergy filed a motion *in limine* seeking to exclude expert testimony regarding industry custom and items of damage beyond the provisions of the Purchase Order. (Rec. Doc. 31). Entergy contends that the clear terms of the Purchase Order provide that Entergy could reject the Transformer and not accept a replacement, so any expert testimony regarding industry custom and whether Entergy should have afforded HICO an opportunity to repair the transformer is irrelevant and therefore inadmissible. (Rec. Doc. 28-1 at 3). Here, Entergy avers that a party can

introduce evidence of industry custom when a contract lacks specificity, but in the instant situation, the Purchase Order specifically provides for the rejection of the transformer. (Rec. Doc. 28-1 at 4-5). Further, Entergy argues that the Court should not permit HICO to introduce evidence of certain damages, including the cost of shipping the transformer to South Korea, the cost of the investigation into the transformation's defects, and the cost of storing the transformer, because the Purchase Order specifies that HICO would pay for all shipping costs in the event of a rejection. (Rec. Doc. 28-1 at 6).

HICO opposes the motion. HICO argues that the Court should deny the motion because it is vague and overbroad and because Entergy fails to cite or include any of the evidence it seeks to exclude. (Rec. Doc. 31 at 1). Further, HICO contends that the "Contract unambiguously allows HICO the right to repair or replace a transformer, which necessarily includes a reasonable opportunity to repair," so expert testimony is helpful for the factfinder to determine what constitutes a "reasonable opportunity to repair" in the industry. (Rec. Doc. 31 at 6). HICO avers that the Fifth Circuit and Louisiana Courts have held that expert testimony on industry standards and custom is admissible in contract disputes involving questions of reasonableness. (Rec. Doc. 31 at 6). Alternatively, HICO argues that the testimony is admissible because the Purchase Order is ambiguous. (Rec. Doc. 31 at 15). In response to Entergy's argument that the Court should exclude HICO's claims for damages, HICO argues that such an argument can be raised only in a summary judgment motion and cannot be raised in a motion *in limine* because Entergy seeks to limit HICO's claims. (Rec. Doc. 31 at 19-20).

### 2. Law and Analysis

As already outlined in the Court's reasoning denying HICO's Motion for Partial Summary Judgment, there remain factual disputes surrounding the contract interpretation and

whether Entergy afforded HICO a reasonable opportunity to fix the transformer. These issues necessitate parol evidence in the form of expert testimony as to industry custom. Further, regarding HICO's claims for damages, the Court agrees that such an argument to exclude damages goes to the merits of HICO's arguments and is not a proper evidentiary motion. Accordingly, the Court will deny Entergy's motion *in limine*.

### C. HICO's Motion to Strike Declaration of Scott McCann (Rec. Doc. 36)

HICO seeks to strike the Declaration of Scott McCann, which Entergy attached to its Opposition to HICO's Motion for Partial Summary Judgment, because the Declaration contradicts Mr. McCann's prior sworn testimony that the parties negotiated the HICO Warranty and Section 10 of the Contract. (Rec. Doc. 36-1 at 2). The Court finds that because it has already held that the Warranty is part of the Purchase Order by reference, a ruling on this motion will have no bearing on the outcome of HICO's argument. Accordingly, the Court will deny the motion as moot.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant HICO American Sales & Technology Co., Inc.'s Motion for Partial Summary Judgment (Rec. Doc. 29) is **DENIED**; Plaintiff Entergy Louisiana LLC's Motion *in limine* to Exclude Expert Testimony Regarding Custom and Items of Damage Beyond the Provisions in the Purchase Order (Rec. Doc. 28) is **DENIED**; and (3) HICO's Motion to Strike the Declaration of Scott McCann (Rec. Doc. 36) is **DENIED AS MOOT**.

New Orleans, Louisiana, this 18th day of June, 2015.

_____
UNITED STATES DISTRICT JUDGE